**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3599
_____

MICHAEL TAIT; JOSHUA SILVER;
ANN BOULAIS,
            Appellants

v.

CITY OF PHILADELPHIA
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 08-cv-03083)
District Judge:  Honorable Jan E. Dubois
_____

Argued:  January 11, 2011
_____

Before: SCIRICA, BARRY and VANASKIE, <u>Circuit Judges</u>

(Opinion Filed: February 7, 2011 )
_____

Robert J. McNamara, Esq.  (Argued)
William H. Mellor, III, Esq.
Institute for Justice
901 North Glebe Road
Suite 900
Arlington, VA 22203
        -AND-
Michael L. Berry, Esq.
Gayle C. Sproul, Esq.
Levine, Sullivan, Koch & Schulz

2112 Walnut Street
Third Floor
Philadelphia, PA 19103

Counsel for Appellants


Elise M. Bruhl, Esq. (Argued)
City of Philadelphia
Law Department
1515 Arch Street
One Parkway
Philadelphia, PA 19102
       -AND-
Nicole S. Morris, Esq.
Office of City Solicitor
1515 Arch Street
One Parkway
Philadelphia, PA 19102

Counsel for Appellee


_____

OPINION
_____


BARRY, Circuit Judge

Appellants are tour guides in Philadelphia, Pennsylvania, who allege that an ordinance of the City of Philadelphia ("City") unconstitutionally infringes on their freedom of speech because it requires them to obtain a tour guide certificate from the City before giving certain tours. To obtain a certificate, they must pass a written test and meet other requirements that the ordinance establishes. Due to the City's budget crisis, however, the City has not yet begun to develop the written test or taken any other action

toward creating the tour guide certificate program, and it has no concrete plans to do so in the foreseeable future. In a thorough and well-reasoned opinion, the District Court found that the case was not ripe and dismissed the complaint. We agree, and will affirm.

## I.    BACKGROUND

As we write only for the parties, a brief summary of the facts will suffice. On April 16, 2008, the Mayor of Philadelphia signed a bill enacting an ordinance ("Ordinance") that provided that "[n]o person shall act as a tour guide on any public right-of-way within the Center City Tourist Area unless such person possesses a tour guide certificate issued in accordance with this Section." (R. at 371.) There is no dispute that appellants are "tour guide[s]" who give tours covered by the Ordinance.

The Ordinance identifies several requirements which must be satisfied before one can obtain a tour guide certificate, including passing a written examination, to be developed by the City, that will be "designed to test the applicant's knowledge of the geography, history, historic sites, historic structures, historic objects and other places of interest in the Center City Tourist Area."[1] (*Id.* at 372.) Those who engage in conduct covered by the Ordinance who do not have a tour guide certificate are subject to fines and, for repeat offenders, loss of a business privilege license. Appellants challenge only the portions of the Ordinance that make a tour guide certificate mandatory; in other

---

[1] A tour guide would be exempt from taking the written exam, although not from the Ordinance's other requirements, if his or her employer offered its own educational program that the City found to be "equivalent to or exceed[ing] the written examination." (R. at 373.)

3

words, they would not object to a voluntary certification scheme.

City Representative Melanie Johnson, who is responsible for "the promotion and marketing of the City of Philadelphia" (*id.* at 68), testified at the hearing in the District Court on the then-plaintiffs' motion for a temporary and permanent injunction. Johnson's office would administer the tour guide certificate program, but she testified that the City had neither the money nor the staff to develop the written test or other aspects of the tour guide certificate program and that it had no immediate plans to do so. The budget crisis in Philadelphia led to a hiring freeze and budget cuts, and the budget for the City Representative's office in 2010 was projected to be significantly less than that for 2009.[2] Johnson testified that enforcing the Ordinance was nonetheless "[a]bsolutely" important to the City. (*Id.* at 119.) When Johnson was asked if she was "disavowing any intention of enforcing the ordinance if [the City was] allowed to," she responded, "Not at all." (*Id.* at 122.)

At oral argument before us,[3] however, the City said that it *has* "disavowed" enforcing the Ordinance "for the foreseeable future" and agreed that, practically speaking, the City cannot enforce the Ordinance until it develops the written test and puts into place a process by which tour guides can obtain tour guide certificates. The City told us that the disavowal will end when it announces the first written test on the City's website and "in a

---

[2] There is nothing in the record regarding the City's budget for 2011 or future years.

[3] Appellants' claims must remain ripe throughout the litigation, and the City's comments at oral argument are therefore pertinent to our ripeness analysis.

4

newspaper of general circulation," as the Ordinance requires. (*See id.* at 372.)

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Appellants do not challenge the Court's factual findings, and we exercise plenary review over the Court's determination that the case is not ripe. *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994).

## III. ANALYSIS

The District Court held that the City's "present inability to enforce [the Ordinance] vitiates ripeness" and dismissed the complaint for lack of subject matter jurisdiction. (R. at 2.) The only question before us is whether appellants' free-speech challenge to the Ordinance is ripe, despite the fact that the City's financial difficulties prevent it from developing the written test and other parts of the tour guide certificate program, which in turn renders the City unable to enforce the Ordinance at this time or in the foreseeable future.

In analyzing ripeness, the inquiry is whether appellants have brought their claims at the right time, i.e., whether the "dispute is sufficiently concrete" such that the District Court could avoid issuing an advisory opinion. *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003). To be ripe, there must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an

5

opinion advising what the law would be upon a hypothetical state of facts." *Presbytery*, 40 F.3d at 1463 (internal quotation marks omitted). In determining whether a case is ripe, we generally examine "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment."[4] *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).

Appellants' facial free-speech challenge "is subject to a relaxed ripeness standard." *Peachlum*, 333 F.3d at 434. We have "allowed somewhat liberally" such challenges prior to any government enforcement of a restriction on speech. *Id.* at 435. We do so because of our concerns that (1) "a person will merely comply with an illegitimate statute rather than be subjected to prosecution" and (2) "the government may choose never to put the law to the test by initiating a prosecution, while the presence of the statute on the books nonetheless chills constitutionally protected conduct." *Id.* Appellants argue that the second concern is precisely what is at issue here, but in this case there is no evidence that the speech of any tour guide has been chilled. Given the City's statement at oral argument that it has "disavowed" enforcement of the Ordinance until it announces that a written test will be administered, moreover, we see no reason that speech *would* be chilled before, at the earliest, that announcement.

---

[4] We may consider other factors in analyzing ripeness, but no party suggests that we do so here. *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001).

We will proceed to analyze the ripeness of appellants' free-speech claims according to the three *Step-Saver* factors.

## A. Adversity of Interest

There may be adversity of interest without a "completed harm," but "it is necessary that there be a substantial threat of real harm and that the threat must remain real and immediate throughout the course of the litigation." *Presbytery*, 40 F.3d at 1463 (internal quotation marks omitted). When a government body promises not to enforce a restriction against a plaintiff, or at all, there is no longer "a substantial threat of real harm" because "intervening events [have] remove[d] the possibility of harm." *Id.*; *see also Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir. 1990) (holding that a claim was not ripe as to certain regulations when there was "an express assurance that there will be no enforcement" of those provisions). The District Court held that the City's claimed inability to enforce the Ordinance at this time is equivalent to a promise not to enforce the Ordinance, and at oral argument the City went further and stated that it "disavowed" enforcement of the Ordinance until it announces that a written test will be administered.

In *Presbytery*, we held that the threat of prosecution for one individual plaintiff was "real and substantial" because the state "refus[ed] to waive prosecution" against him outside of his capacity as a member of the clergy. *Presbytery*, 40 F.3d at 1468 (internal quotation marks omitted); *see also Peachlum*, 333 F.3d at 435 (citing *Presbytery* for the proposition that "in cases involving fundamental rights, even the remotest threat of

7

prosecution, such as the absence of a promise not to prosecute, has supported a holding of ripeness where the issues in the case were 'predominantly legal' and did not require additional factual development"). Appellants argue that they face the same threat as the plaintiff in *Presbytery* because the City has not wholly disavowed enforcement of the Ordinance but rather plans to enforce it at an unknown future time. *Presbytery* is, however, distinguishable from this case. In *Presbytery*, there was no identifiable impediment to the state's enforcement of the statute against the individual plaintiff. Here, by contrast, the City must do a good deal of work, most notably developing the written test, before it can begin to enforce the Ordinance.

We express no opinion as to when, if at all, this case will become ripe, much less whether it may become ripe before the City announces the first written test. The only question before us is whether the case is ripe *now*, where there is (1) a significant and identifiable task – creating the tour guide certificate program – that the City must complete before it is able to enforce the Ordinance, (2) no evidence in the record that the City will create the program in the foreseeable future, and (3) no evidence that the speech of anyone is being or has been chilled. Under these circumstances, we agree with the District Court that there is not a substantial and immediate threat of real harm.

### B.    Conclusiveness of the Judicial Judgment

"The conclusivity inquiry . . . goes to whether the parties' rights will be definitively decided by a declaratory judgment." *Step-Saver*, 912 F.2d at 649 n.9. We ask

8

"[w]hether issues are purely legal (as against factual)" and "[w]hether further factual development would be useful." *NE Hub Partners*, 239 F.3d at 342 n.9. We agree with the District Court that a declaratory judgment would determine the rights of both parties, and this factor therefore weighs in favor of ripeness.

### C.   Utility

"The utility inquiry . . . goes . . . to whether the parties' plans of actions [sic] are likely to be affected by a declaratory judgment." *Step-Saver*, 912 F.2d at 649 n.9. We look at the "[h]ardship to the parties of withholding decision" and "[w]hether the claim involves uncertain and contingent events." *NE Hub Partners*, 239 F.3d at 342 n.9. The District Court found that there was no utility because although a judgment in the then-plaintiffs' favor might put them "at ease," they did not "demonstrate[] that having [the Ordinance] on the books without present enforcement would cause real-world behavioral modification or suppression of speech." (R. at 20-21.) Regarding utility, appellants again rely on *Presbytery*, in which the individual plaintiff claimed that he would violate the restriction at issue regardless of the court's decision and we nonetheless "assume[d that] his willingness to do so [was] likely to be affected by resolution of th[e] action." *Presbytery*, 40 F.3d at 1470. We see no reason to make that assumption here, and we agree with the District Court that a judgment would have no utility because there is no evidence that it would have a real-world effect on anyone.

9

## IV. CONCLUSION

Having weighed the *Step-Saver* factors, we conclude that this case is not ripe, and we will therefore affirm the order of the District Court.